IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

|  |  |  |
|---|---|---|
| DEDICATED NURSING ASSOCIATES, INC., | ) ) ) ) | Civil Action No: 2:23-cv-01597-JFC-CBB |
| Plaintiff, | ) ) ) | Senior United States District Judge Joy Flowers Conti |
| vs. | ) ) ) | United States Magistrate Judge Christopher B. Brown |
| BUCKEYE FOREST AT AKRON LLC, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**REPORT AND RECOMMENDATION
ON MOTIONS TO DISMISS ECF Nos. 7 and 39**

**Christopher B. Brown, United States Magistrate Judge**

## I.    Recommendation

This civil action was removed to this Court by several Defendants[1] from the

Court of Common Pleas of Westmoreland, County Pennsylvania on September 5,

---

[1]    The following Defendants filed the notice of removal: Buckeye Forest at
Akron LLC d/b/a Highland Square Rehabilitation and Nursing Center ("Akron"),
Buckeye Forest at Bellefontaine LLC d/b/a Ayden Healthcare of Belle Springs
("Bellefontaine"), Buckeye Forest at Cleveland LLC d/b/a Gardens of Euclid Beach
("Cleveland"), Buckeye Forest at Greenville LLC, d/b/a Ayden Healthcare of
Greenville ("Greenville"), Buckeye Forest at Madeira LLC d/b/a Ayden Healthcare
of Madeira ("Madeira"), Buckeye Forest at Mayfield Heights LLC d/b/a Gardens of
Mayfield Heights ("Mayfield Heights"), Buckeye Forest at North Olmsted LLC d/b/a
Gardens of North Olmsted ("North Olmsted"), Buckeye Forest at Waterville LLC
d/b/a Ayden Healthcare of Waterville ("Waterville"), Buckeye Forest at Fairfield
LLC d/b/a Ayden Healthcare of Fairfield ("Fairfield"), Samuel Feuer, Larry Katz,
Ephram Lahasky, Eli Leshkowitz, Solomon Kazarnovsky, Abba Stein, Mordechai
Weisz, and Med Healthcare Partners.

2023.  Plaintiff Dedicated Nursing Associates, Inc. ("DNA") is a nursing staffing company and alleges that Defendants, who are alleged owners or operators of several skilled nursing facilities located in Ohio, breached contracts with DNA to provide nursing services by failing to pay for those services.

The Court has subject matter jurisdiction under 28 U.S.C. § 1332.[2]

Presently pending before the Court are two motions to dismiss by Defendants[3] pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. ECF Nos. 7 & 39.  The motions are fully briefed and ripe for consideration. ECF Nos. 8, 13, 14, 39, 44, 55, 56.

For the following reasons, it is respectfully recommended that the Court grant Defendants' motions to dismiss DNA's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and dismiss DNA's claims without prejudice for DNA to reassert in the appropriate forum.

---

[2]      Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the jurisdictional threshold. *See* ECF Nos. 47, 49, 51.

[3]      Moving Defendants include the following: Akron, Bellefontaine, Cleveland, Greenville, Madeira, Mayfield Heights, North Olmsted, Waterville, Fairfield, Samuel Feuer, Larry Katz, Ephram Lahasky, Eli Leshkowitz, Solomon Kazarnovsky, Abba Stein, Mordechai Weisz, Med Healthcare Partners and Hillstone Healthcare, Inc. (collectively "Defendants"). Defendants also indicate that many of the references to the d/b/a entities are incorrect, however they indicate that the incorrect naming is not relevant to the issues raised in the motion to dismiss.

## II.   Report

### a.   Factual and Procedural Background

DNA is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with offices located in Westmoreland County, Pennsylvania and is a staffing company engaged in the business of providing registered nurses, licensed practical nurses, certified nursing aids and other medical assistance. Am. Compl. ECF No. 1-6 at ¶¶ 1, 38.  Defendants Akron, Bellefontaine, Euclid, Greenville, Olmstead, Madeira, Mayfield, Waterville and Woodbridge are skilled nursing facilities (the "Facilities") and were originally owned by Defendant Boulder Operations Holdings, LLC ("Boulder"). *Id*. at ¶¶ 36-37. Sometime in 2019, DNA provided nursing personnel to the Facilities owned by Boulder, and neither Boulder nor the Facilities paid DNA for its nursing services. DNA also claims that Hillstone Healthcare, Inc. ("Hillstone") has an ownership interest in the Woodbridge and Bellefontaine Facilities and those facilities likewise did not pay DNA for its nursing services.  DNA alleges that the contracts with the Facilities provided that payment was due at DNA's principal place of business located in Westmoreland County, Pennsylvania. *Id*. at ¶ 35.

Thereafter, in November 2019, DNA filed an action against several Original Defendants,[4] including Boulder, in the Court of Common Pleas of Westmoreland

---

[4]      In the Westmoreland County action, DNA alleged that Akron Healthcare LLC d/b/a Akron Healthcare, Bellefontaine Healthcare LLC d/b/a Bellefontaine Healthcare, Euclid Beach Healthcare LLC d/b/a Euclid Beach Healthcare, Greenville Healthcare LLC d/b/a Greenville Healthcare, North Olmsted Healthcare LLC d/b/a North Olmsted Healthcare, Madeira Healthcare LLC d/b/a Madeira

County, Pennsylvania alleging that they breached contracts with DNA for failing to pay for the nursing services DNA provided to the Facilities (the "Westmoreland County action"). The Westmoreland County action was litigated for several years until Boulder and several of the Original Defendants filed for bankruptcy in the District of Delaware in August 2022. *Id.* at ¶ 41. DNA was listed as a creditor in the bankruptcy action and the Meeting of Creditors was held on September 12, 2022, which counsel for DNA attended. Boulder Bankruptcy Petition ECF No. 7-1 at 18; Am. Compl. ECF No. 1-6 at ¶¶ 43-44.[5] It was at this Meeting of Creditors where DNA alleges it first learned that the Facilities were sold eight months prior to the bankruptcy filing to Defendant Med Healthcare Partners for $145 million, that the Facilities continued to operate under this new ownership, and that no notice of sale was provided to the creditors of the Facilities in the bankruptcy action. Am. Compl. ECF No. 1-6 at ¶¶ 45-46. The Suggestion of Bankruptcy was served on DNA's counsel on November 17, 2022, and DNA filed a proof of claim in the amount of

---

Healthcare, Mayfield Heights Healthcare LLC d/b/a Mayfield Heights Healthcare, Waterville Healthcare LLC d/b/a Waterville Healthcare, Woodbridge Healthcare LLC d/b/a Woodbridge Healthcare, Boulder Operations Holdings LLC, Hillstone Healthcare, Inc., SMZ MGMT Holdings LLC d/b/a Reach LTC, SIRO MGMT Big River LLC d/b/a Reach LTC, and Reach AW Management LLC d/b/a Reach LTC (the "Original Defendants") breached service contracts with DNA.

[5]     While DNA does not allege in its Amended Complaint that it is a named creditor in the Original Defendants' bankruptcy action, the Court may consider the exhibits attached to the pleadings and take judicial notice of the Bankruptcy Petition, 22-10664 (D.Del. 2022). *Wakley Ltd. v. Ensotran, LLC*, No. CV 12-728-GMS, 2014 WL 1116968, at *3 (D. Del. Mar. 18, 2014).

$394,688.42 in the bankruptcy action on March 22, 2023.[6] ECF Nos. 7-3 at 4; 7-4 at 2-4.

Thereafter, DNA filed an amended complaint in the Westmoreland County action naming the Facilities' alleged successors-in-interest, *i.e.* Med Healthcare Partners.  Based on diversity jurisdiction, those newly named Defendants removed the Westmoreland County action to federal court. *See supra* note 1.

Upon removal, this Court entered a stay after the suggestion of bankruptcy was filed, as to Boulder and several of the Original Defendants. ECF No. 12.  Thereafter, DNA voluntarily dismissed several other Defendants, ECF Nos. 19, 20, and default was entered against another. ECF No. 30.  The following Defendants remain in this case: Akron, Bellefontaine, Cleveland, Greenville, Madeira, Mayfield Heights, North Olmsted, Waterville, Fairfield, Samuel Feuer, Larry Katz, Ephram Lahasky, Eli Leshkowitz, Solomon Kazarnovsky, Abba Stein, Mordechai Weisz, Med Healthcare Partners, and Hillstone.

DNA claims that the now-bankrupt Facilities have outstanding invoices for nursing staffing services amounting to several hundred-thousand dollars *See* Am. Compl. ECF No. 1-6 at Counts I-IX.  DNA asserts successor liability claims against Defendants Akron, Bellefontaine, Cleveland, Greenville, Madeira, Mayfield Heights, North Olmsted, Waterville, and Fairfield for these outstanding balances

---

[6]     While it does not appear that the Suggestion of Bankruptcy was served on DNA until after the Meeting of Creditors, it appears that DNA had some notice of the bankruptcy and the Meeting of Creditors by virtue of its counsel attending the meeting.

post-acquisition of the Facilities by Med Healthcare Partners. *See* Am. Compl. ECF No. 1-6 at Counts XXII-XXX.  DNA also maintains that the individual Defendants – Samuel Feuer, Larry Katz, Ephram Lahasky, Eli Leshkowitz, Solomon Kazarnovsky, Abba Stein, and Mordechai Weisz – and Med Healthcare Partners and Hillstone were unjustly enriched because they realized the benefit of DNA providing nursing personnel to the Facilities and were able to continue operating and generating income and personally received profits from the Facilities due to their ownership interests. *See id*. at Counts XX, XXXII-XXXVI.  Lastly, DNA asserts a fraud claim against Defendants Akron, Bellefontaine, Cleveland, Greenville, Madeira, Mayfield Heights, North Olmsted, Waterville, Fairfield, and Med Healthcare Partners. *See id*. at Count XXXI.

Defendants argue that the claims against them should be dismissed because the Court does not have personal jurisdiction over them, and because DNA failed to state a claim against them.  Because it is recommended that the Court grant Defendants' motion to dismiss for lack of personal jurisdiction, only that analysis follows.

### b.  Standard of Review

#### i.  Fed. R. Civ. P. 12(b)(2) – Lack of Personal Jurisdiction

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).  Where a defendant moves to dismiss an action for lack of

personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of showing that the court has personal jurisdiction over the moving defendant. *See D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009); *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001).  Ultimately, the plaintiff must prove personal jurisdiction by a preponderance of the evidence. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). But at an early stage of litigation, without an evidentiary hearing on a Fed. R. Civ. P. 12(b)(2) motion, "the plaintiff need only establish a *prima facie* case of personal jurisdiction." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).  The plaintiff presents a *prima facie* case of personal jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS, Nat. Ass'n*, 960 F.2d at 1223 (citing *Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434 (3d Cir. 1987)).

Courts reviewing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) conduct a burden-shifting analysis, initially "accept[ing] all of the plaintiff's allegations as true and constru[ing] disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). If the plaintiff's factual allegations, taken as true, do not establish personal jurisdiction, then a court must grant the motion and dismiss all claims against the defendant. *Id.*; *Knopick v. UBS AG*, No. 1:14-CV-2090, 2016 WL 7212952, at *1 (M.D. Pa. Apr. 5, 2016) (dismissing claims when allegations "[were] insufficient to withstand any

minimum contacts scrutiny that the Court could apply.").  Otherwise, the defendant's motion must include evidence sufficient to challenge personal jurisdiction.  If it does, the burden reverts to the plaintiff because, at this point, a Fed. R. Civ. P. 12(b)(2) motion "requires resolution of factual issues outside the pleadings, i.e., whether *in personam* jurisdiction actually lies." *Time Share Vacation Club v. A. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).  At this point, the plaintiff must support the *prima facie* existence of personal jurisdiction with "sufficient jurisdictional facts by affidavit, depositions or other competent evidence." *McMullen v. European Adoption Consultants, Inc.*, 129 F. Supp. 2d 805, 810 (W.D. Pa. 2001) (citation omitted). *See also Time Share Vacation Club*, 735 F.2d at 63, 66 n.9.  At this stage, the plaintiff's reliance "on the bare pleadings alone" is insufficient; the "plaintiff must respond with actual proofs, not mere allegations." *Id.* (citing *Intl. Ass'n of Machinists & Aerospace Workers v. N.W. Airlines, Inc.*, 673 F.2d 700, 711–12 (3d Cir. 1982)). Examining the evidence, the court construes any disputed facts supported by competent evidence in the plaintiff's favor. *See Carteret Sav. Bank, FA*, 954 F.2d at 142 n.1.

"Once the plaintiff has made out a *prima facie* case in favor of personal jurisdiction," the burden shifts back to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable," including constitutional requirements of due process to determine whether exercising personal jurisdiction comports with "fair play and substantial

justice." *Mellon Bank (East) PSFS, Nat. Ass'n*, 960 F.2d at 1226 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (other citation omitted)).

### c. Discussion

#### i. Personal Jurisdiction

In determining whether it may exercise personal jurisdiction over a defendant, a federal district court looks first to the long-arm statute of the forum state. Fed. R. Civ. P. 4(k)(1)(A).  Pennsylvania's long-arm statute permits the exercise of personal jurisdiction to the fullest extent allowed by the Due Process Clause of the Fourteenth Amendment. *See* 42 Pa.C.S.A. § 5322; *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007).  This inquiry asks whether the defendant established minimum contacts that have a substantial connection with the forum. *Burger King Corp.*, 471 U.S. at 475 (citing cases); *Intl. Shoe Co. v. State of Wash., Off. of Unempl. Compen. and Placement*, 326 U.S. 310, 319 (1945).  Such minimum contacts may be shown under two theories: general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984).  A court may exercise general personal jurisdiction only when a defendant is "essentially at home" in the state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  "[A]n individual is subject to general jurisdiction in her place of domicile." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).  "And the 'equivalent' forums for a corporation are its place of incorporation and principal place of business." *Id.* at 359.

9

Here, DNA argues that all Defendants are subject to specific jurisdiction in Pennsylvania.  Specific jurisdiction exists where a defendant purposefully directs its activities at residents of the forum state and the subject of litigation results from alleged injuries that "arise out of or relate to" those activities. *Burger King Corp.*, 471 U.S. at 473–74.  A court must engage in a three-part inquiry to determine whether specific jurisdiction exists.  First, the court must determine whether the defendant "purposefully established 'minimum contacts' in the forum State." *Id.* at 472.  Second, the court must determine whether the litigation "arise[s] out of or relate[s] to" at least one of those contacts. *Helicopteros*, 466 U.S. at 414.  If those two elements are met, then the court must determine whether exercising personal jurisdiction "accords with the notions of fair play and substantial justice." *Grand Ent. Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 481 (3d Cir. 1993) (cleaned up).  Courts generally analyze jurisdictional contacts on a claim-by-claim basis unless the claims overlap factually. *See O'Connor*, 496 F.3d at 317 n.3.

10

## 1. Individual Defendants[7]

The individual Defendants argue that this Court does not have personal jurisdiction over them as they do not have sufficient minimum contacts with the Commonwealth of Pennsylvania.

DNA responds that the Court has specific personal jurisdiction over the individual Defendants through their contacts with Pennsylvania.  DNA argues that "[t]he individual Defendants in the case *sub judice* are owners of the Defendant entities and, as such, they are agents of the Defendant entities and have transacted business in this Commonwealth." Pl.'s Resp. Br. ECF No. 13 at 7.  DNA also argues that Defendant Ephram Lahasky has ownership interest in skilled nursing facilities located in Pennsylvania and was named as a defendant in several lawsuits filed in the state and federal courts of the Commonwealth of Pennsylvania. *Id*. at 7-8.  DNA further argues that Defendant Larry Katz was named as a defendant in one lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania. *Id*.  DNA also argues that Defendants Samuel Feuer, Larry Katz, Eli Leshkowitz, Mordechai Weisz and Ephram Lahasky maintain ownership interests, operational and/or

---

[7]   Individual Defendants include Samuel Feuer, Larry Katz, Ephram Lahasky, Eli Leshkowitz, Solomon Kazarnovsky, Abba Stein, and Mordechai Weisz. Defendants are correct that while DNA identified Samuel Feuer and Larry Katz in its complaint as Defendants, it failed to plead any claims against them.  DNA responds that it should be granted leave to amend its complaint to add claims against these Defendants.  This recommendation assumes that DNA properly pleaded claims against Defendants Feuer and Katz consistent with those pleaded against the other individual Defendants and recommends that allowing DNA to amend its complaint to specify claims asserted against these Defendants would be futile, as the Court does not have personal jurisdiction over them.

managerial control of several other skilled nursing facilities located in

Pennsylvania. *Id*. at 8.

DNA's argument that this Court has personal jurisdiction over the individual

Defendants because of their ownership interests in the business entity Defendants

fails.  DNA asserts no claims for piercing the corporate veil against the individual

Defendants and the only claims against the individual Defendants are that they

were unjustly enriched because of their ownership interest in several of the

facilities and were able to continue operating the facilities, generating income, and

receiving profits because DNA provided nursing services. *See* Am. Compl. ECF No.

1-6 at Counts XXII-XXX.  In Pennsylvania, like most jurisdictions, a corporate

officer, director, shareholder, or owner is not responsible for a corporation's breach

of contract. *Lombardo v. E. Waste of Philadelphia, Inc.*, No. CIV. A. 00-3340, 2001

WL 185561, at *1 (E.D. Pa. Feb. 26, 2001) (citing *Kaplan v. First Options of*

*Chicago, Inc.*, 19 F.3d 1503, 1520–21 (3d Cir. 1994) and *First Realvest v. Avery*

*Builders*, 600 A.2d 601, 603 (Pa. Super. 1991)); *Advanced Tel. Sys., Inc. v. Com–Net*

*Prof'l Mobile Radio, LLC*, 846 A.2d 1264, 1278 (Pa. Super. 2004).  *See also Lumax*

*Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995) (in Pennsylvania, there is a

strong presumption against piercing the corporate veil).  Personal jurisdiction over

a company may be imputed to its officer, director, or shareholder only when there is

a viable accompanying claim to pierce the corporate veil. *Spotts Brothers, Inc. v.*

*Seraphim USA Mfg., Inc.*, No. 3:18-CV-2235, 2019 WL 4267776, at *7 (M.D. Pa.

Aug. 20, 2019), *report and recommendation adopted*, 2019 WL 4265969 (M.D. Pa.

Sept. 9, 2019).  Because there is no basis for piercing the corporate veil to hold the individual Defendants liable, there is no basis to impute personal jurisdiction of the business entity Defendants to the individual Defendants.  And as discussed *infra*, even if DNA provided some basis for piercing the corporate veil, DNA has not set forth a *prima facie* basis to attribute the personal jurisdiction of the Original Defendants to the alleged successor Defendants.

Additionally, that two of the individual Defendants were named in lawsuits filed in Pennsylvania and allegedly own interests in other skilled nursing facilities located in Pennsylvania is also insufficient to confer personal jurisdiction over these Defendants.  Pennsylvania's long-arm statute requires contacts made by the defendant in Pennsylvania "arise out of or relate to" the plaintiff's claims. *D'Jamoos ex rel. Estate of Weingeroff*, 566 F.3d at 102.  Third-party lawsuits filed in Pennsylvania and ownership interests in third-party facilities located in Pennsylvania do not arise out of or relate to DNA's claims that the Original Defendants failed to pay it for services performed in the Facilities located in Ohio. *Ford Motor Company*, 592 U.S. at 359 (for specific personal jurisdiction, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.")

Even assuming the individual Defendants consented to personal jurisdiction in those other lawsuits, "[a] party's consent to jurisdiction in one case . . . extends to that case alone.  It in no way opens that party up to other lawsuits in the same

jurisdiction in which consent was given, where the party does not consent and no other jurisdictional basis is available." *Plumbers' Loc. Union No. 690 Health Plan v. Apotex Corp.*, No. CV 16-665, 2017 WL 3129147, at *10 n.10 (E.D. Pa. July 24, 2017) (quoting *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 50 n.5 (2d Cir. 1991)). Accordingly, DNA has not met its *prima facie* burden of alleging sufficient facts to assert personal jurisdiction over the individual Defendants, and it is respectfully recommended that the claims against the individual Defendants be dismissed for lack of personal jurisdiction without prejudice for DNA to refile its claims in the appropriate forum.[8]

### 2.  Hillstone Healthcare, Inc.

It appears that DNA names Hillstone as a defendant because it had an ownership interest in the Woodbridge and Bellefontaine facilities at the time the contracts for nursing staffing services were entered into. Am. Compl. ECF No. 1-6 at ¶ 278.  DNA claims that Hillstone "received and may still receive profits from its ownership" of these Facilities and asserts a claim for unjust enrichment against

---

[8]      While the Court can recommend transfer to a proper judicial district when dismissing an action for lack of personal jurisdiction, a transfer would not serve the interests of justice under 28 U.S.C. § 1404 where there is not a strong suggestion as to an appropriate destination venue. *Knopick*, 2016 WL 7212952, at *1 (citing 28 U.S.C. § 1404).  Because an appropriate venue is not immediately apparent, no recommendation to transfer to a specific judicial district is made and DNA is free to refile its claims against Defendants in the appropriate forum. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 133 (3d Cir. 2020) ("If a plaintiff may, on its own, refile its case in a proper forum, 'the interests of justice' do not demand transfer.").

Hillstone arguing that without DNA providing the nursing staffing services that went unpaid, the Facilities "would not have been able to continue operations" and therefore Hillstone, as owners of those Facilities were unjustly enriched. *Id.* at ¶¶ 279-282.

Hillstone argues that this claim should be dismissed because the Court does not have personal jurisdiction over it and because DNA failed to state a claim for unjust enrichment. As for personal jurisdiction, Hillstone argues that "there is no connection between [DNA's] claims and Pennsylvania, let alone any connection between Hillstone and Pennsylvania . . . Nor are there any allegations in the Amended Complaint to suggest a connection between [DNA's] claims and Pennsylvania. [DNA's] claims arise out of a dispute between it and the Defendants for work performed in Ohio, not Pennsylvania. Indeed, Hillstone is organized under the laws of Ohio and registered to do business in Ohio." Hillstone Br. ECF No. 44 at 4.

DNA responds that Hillstone is subject to specific personal jurisdiction in Pennsylvania because Hillstone has "done business with" DNA for "many years" prior to this lawsuit, and because DNA "previously filed suit against . . . Hillstone in Pennsylvania" for unpaid nursing staffing services. Pl.'s Resp. Br. ECF No. 55 at 8.

Again, that Hillstone may have been sued in Pennsylvania in the past and did not object to personal jurisdiction in that case extends to that case alone and cannot serve as a basis for personal jurisdiction in this case. *See Plumbers' Local Union No. 690 Health Plan*, 2017 WL 3129147, at *10. Likewise, unspecified allegations that Hillstone had "done business with" DNA in the past is insufficient to establish with

reasonable particularity sufficient contacts between Hillstone and Pennsylvania. To be sure, DNA does not allege that Hillstone contracted with DNA to provide services or that Hillstone is subject to any forum selection clause – instead, DNA alleges that because Hillstone allegedly has an ownership interest in two facilities that contracted with DNA to provide services and because those facilities failed to pay for services, Hillstone was unjustly enriched because it may have received profits from owning a share of those facilities. *See* Am. Compl. ECF No. 1-6 at ¶¶ 278-284.  DNA does not allege that the prior business dealings between it and Hillstone were conducted in Pennsylvania, as opposed to Ohio where the facilities are located and where the nursing staffing services were provided by DNA. *Burger King Corp.*, 471 U.S. at 475–76 (defendant must have "deliberately" engaged in "significant activities within" the forum to be subject to personal jurisdictional there).  DNA has failed to provide any allegations that any part of its business relationship with Hillstone occurred in Pennsylvania or even involved Pennsylvania. *See e.g., inno360, Inc. v. Zakta, LLC*, 50 F. Supp. 3d 587, 595–96 (D. Del. 2014).  Without more, DNA has fell short of establishing a *prima facie* showing for exercising personal jurisdiction over Hillstone, and the claims against Hillstone should be dismissed without prejudice for DNA to assert in the appropriate forum. *See supra* note 7.

### 3. Successor Liability and Personal Jurisdiction of the Med Healthcare Defendants[9]

DNA claims that the Court has jurisdiction over the Med Healthcare Defendants because they are successors in interest to the Original Defendants who entered into contracts with DNA, a Pennsylvania company, and those contracts included choice of law and venue provisions that provided any disputes would be litigated under the laws of the Commonwealth of Pennsylvania and in the venue of Westmoreland County or the Western District of Pennsylvania. Pl.'s Resp. Br. ECF No. 13 at 6. DNA claims that because the Med Healthcare Defendants purchased the Facilities and continued operating the Facilities, as evidenced by testimony during bankruptcy proceedings, that the Med Healthcare Defendants are the successors-in-interest to the Original Defendants and therefore responsible for the unpaid staffing services provided by DNA. *Id.* at 4.

The Med Healthcare Defendants move to dismiss DNA's complaint by arguing that this Court lacks personal jurisdiction over them because the alleged breach of contract with DNA occurred in the State of Ohio and no Defendant has sufficient contacts with the Commonwealth of Pennsylvania to be hauled into court here. Defs.' Br. ECF No. 8 at 7-10. They further argue that DNA has failed to state a claim for successor liability. *Id.* at 11-14.

---

[9]     These Defendants include Akron, Bellefontaine, Cleveland, Greenville, Madeira, Mayfield Heights, North Olmsted, Waterville, Fairfield, and Med Healthcare Partners, LLC and are collectively referred to as the "Med Healthcare Defendants."

The question of personal jurisdiction over the Med Healthcare Defendants is not as straightforward as it appears.  The Court must make a twofold analysis: First, the Court must determine whether the Original Defendants purposefully availed themselves of a Pennsylvania forum so that they would reasonably anticipate to litigate here; and second, whether there is an inference of successor liability between Original Defendants and the Med Healthcare Defendants so that the personal jurisdiction of the Original Defendants can be attributed to the Med Healthcare Defendants. *See Penco Products, Inc. v. WEC Mfg., LLC*, 974 F. Supp. 2d 740, 749 (E.D. Pa. 2013).

As for the first component, DNA's allegations that the contracts between DNA and Original Defendants include a choice of venue provision choosing Pennsylvania as the forum for disputes and that Original Defendants were aware they were contracting with a Pennsylvania company because the contracts for nursing services provided that payments were due at DNA's place of business located in Pennsylvania is enough to establish a *prima facie* showing of personal jurisdiction over the Original Defendants.  While a contract does not automatically establish sufficient minimum contacts with the other party's home forum, it may provide a basis for the exercise of personal jurisdiction when "the nonresident defendant solicited, negotiated, or executed the contract in the forum state[,]" when the contract contains "a forum selection clause" or "if the nonresident defendant knew or should have known that it was dealing with a company located in the forum state." *Penco Products, Inc.*, 974 F. Supp. 2d at 750.  That Original

Defendants were never physically present in Pennsylvania is not determinative of the specific personal jurisdictional analysis, as "[d]ue process does not require a defendant's physical presence in the forum before personal jurisdiction is exercised." *Grand Entertainment Group, Ltd.*, 988 F.2d at 482.  Taking as true that the contracts contained forum selection clauses selecting Pennsylvania as its forum and assuming that Original Defendants knew or should have known it was dealing with a company located in Pennsylvania because it remitted its payments to DNA's place of business in Pennsylvania, this is enough to establish a *prima facie* showing of personal jurisdiction as to the now-bankrupt Original Defendants.

Turning to the second component, "under Pennsylvania law, the acts of a predecessor corporation may be attributed to its successor for purposes of determining whether [personal] jurisdiction over the successor is proper." *Huth v. Hillsboro Ins. Mgt., Inc.*, 72 F. Supp. 2d 506, 510 (E.D. Pa. 1999) (alteration supplied) (citing *Simmers v. Am. Cyanamid Corp.*, 576 A.2d 376, 381 (Pa. Super. 1990)). *See also Penco Products, Inc.*, 974 F. Supp. 2d at 749.   In considering a motion under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction or Fed. R. Civ. P. 12(b)(6) for failure to state a claim, a "plaintiff asserting successor liability must adequately plead facts that could raise such an inference of successorship." *Metro Container Group v. AC & T Co., Inc.*, 450 F. Supp. 3d 583, 604 (E.D. Pa. 2020), *vacated on other grounds*, 2020 WL 3060381 (E.D. Pa. June 8, 2020).

The parties disagree on whether Pennsylvania or Delaware law applies to the issue of successor liability for personal jurisdictional purposes.  The Med Healthcare

19

Defendants argue that Delaware law applies because the agreement for sale of the Facilities between it and the Original Defendants explicitly provides that Delaware law applies to the transaction. Defs.' Br. ECF No. 8 at 12; Defs.' Reply ECF No. 14 at 2.  DNA seemingly maintains that Pennsylvania law applies because its contracts with the Original Defendants provides that Pennsylvania law applies to any dispute. Pl.'s Resp. Br. ECF No. 13 at 11.  While the issue of what law applies where there are competing choice of law provisions in the transactional contract and the contract in dispute for successor liability purposes is not fully before the Court, there does not appear to be a material difference between Delaware and Pennsylvania law on determining successor liability. *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997) (a court should avoid the choice-of-law question where there is a "false conflict" and the application of two jurisdictions would produce the same result).

In both Pennsylvania and Delaware, it is a general rule that a successor company does not automatically assume the debts of its predecessor. *Smith v. A.O. Smith Corp.*, 270 A.3d 1185, 1192 (Pa. Super. 2022) (applying Pennsylvania law); *Mason v. Network of Wilmington, Inc.*, No. CIV.A. 19434-NC, 2005 WL 1653954, at *5 (Del. Ch. July 1, 2005) (applying Delaware law); *Buck v. Endo Pharm., Inc.*, No. CV 19-837, 2019 WL 1900475, at *3 n.13 (E.D. Pa. Apr. 29, 2019) (noting that Pennsylvania and Delaware law concerning successor liability is the same). However, a successor company may be liable for the debts of the selling company if: (1) the purchaser of the assets expressly or impliedly agrees to assume the

obligations of the seller; (2) the transaction is a *de facto* merger; (3) the purchasing company is a mere continuation of the seller's company; or (4) the transaction is fraudulently entered into to escape liability. *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 308–09 (3d Cir. 1985) (applying Pennsylvania law); *Elmer v. Tenneco Resins, Inc.*, 698 F. Supp. 535, 540 (D. Del. 1988) (applying Delaware law).

DNA seemingly argues that the sale of the Facilities should be construed as a *de facto* merger because of testimony at the Meeting of Creditors in the bankruptcy action that the Facilities were sold to Med Healthcare Partners for $145 million and "continue to operate, under new ownership[.]" Compl. (ECF No. 1-6) at ¶¶ 45-46. This fact alone is insufficient to raise belief beyond a speculative level that the Med Healthcare Defendants are successors-in-interest to Original Defendants simply by purchasing the Facilities.

Under Delaware law, a *de facto* merger exists when

(1) one corporation has transferred all of its assets to another corporation; (2) payment was made in stock, issued by the transferee directly to the shareholders of the transferring corporation; and (3) in exchange for their stock, the transferee agreed to assume all the debts and liabilities of the transferor.

*Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 397 (D. Del. 2012).

Under Pennsylvania law, a *de facto* merger exists when:

(1) There is a continuation of the enterprise of the seller corporation, so that there is continuity of management, personnel, physical location, assets, and general business operations. (2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation. (3) The seller corporation ceases its ordinary business operations, liquidates,

21

and dissolves as soon as legally and practically possible. (4) The purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

*Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 468–69 (3d Cir. 2006).  In Pennsylvania, "[n]ot all of these factors need be present for a *de facto* merger or continuation to have occurred. The crucial inquiry is whether there was an intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets." *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 73 (3d Cir. 1993).

While Delaware and Pennsylvania law may differ on what constitutes a *de facto* merger for successor liability, DNA's complaint falls far short of adequately pleading any facts that would tend to support a *de facto* merger under Delaware or Pennsylvania law that is sufficient to attribute personal jurisdiction over the Med Healthcare Defendants from the Original Defendants' conduct. *See e.g., AJZN, Inc. v. Yu*, No. CV 13-149 GMS, 2015 WL 331937, at *15 (D. Del. Jan. 26, 2015) (finding that allegations of asset transfer from one company to the other while still being controlled by the same individual were sufficient to state a successor liability claim based on *de facto* merger theory under Delaware law); *Am. Glob. Logistics v. Elk Group Intl., LLC*, No. 3:18-CV-1330, 2019 WL 1320793 (M.D. Pa. Feb. 19, 2019), *report and recommendation adopted sub nom.*, 2019 WL 1318248 (M.D. Pa. Mar. 22, 2019) (finding that allegations that the predecessor ceased operations, the successor continued to market the predecessor's brand as if no sale occurred, held itself out to be the continuation of the predecessor, offered the same products, used the same

22

vendors and supplies, operated out of the same premises and facilities, and continued to employee same individuals including officers, directors, supervisors and key personnel were sufficient to state a successor liability based on a *de facto* merger theory under Pennsylvania law).

DNA's allegations that the Med Healthcare Defendants purchased the Facilities from the Original Defendants and are alleged to have "continued operations" following that purchase are not sufficient to raise an inference of successor liability and therefore is not enough to attribute the acts of the Original Defendants to the Med Healthcare Defendants for Fed. R. Civ. P. 12(b)(2) purposes. *See e.g., Hamill v. Twin Cedars Senior Living Ctr.*, No. 3:20-CV-231, 2020 WL 7329228, at *6 (M.D. Pa. Nov. 23, 2020), *report and recommendation adopted sub nom. Hamill v. Twin Cedars Senior Living, LLC*, No. 3:20-CV-231, 2020 WL 7323870 (M.D. Pa. Dec. 11, 2020) (allegations that successor company continued to operate same personal care home facility with same phone number and address, building and website and continued the use of the registered business name was not enough to plead a *de facto* merger theory under Pennsylvania law); *Spring Real Est., LLC v. Echo/RT Holdings, LLC*, No. CIV.A. 7994-VCN, 2013 WL 6916277, at *5 (Del. Ch. Dec. 31, 2013) (dismissing *de facto* merger claim arising out of an asset purchase agreement under Delaware law).

Therefore, it is respectfully recommended that the Court grant Defendants' motion to dismiss DNA's complaint for failure to adequately allege personal jurisdiction over the Med Healthcare Defendants. It is further recommended that

this dismissal be without prejudice for DNA to refile its claims in the appropriate forum.[10] *See supra* note 7.

## III.    Conclusion

For the reasons stated herein, it is respectfully recommended that the Court grant Defendants' motions to dismiss DNA's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) ECF Nos. 7 & 39 and DNA's claims be dismissed without prejudice to reassert in the appropriate forum.[11]

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation.  Any party opposing the objections shall have fourteen (14) days

---

[10]    Because it is recommended that the Court dismiss DNA's claims against Defendants for lack of personal jurisdiction, and DNA's claims for successor liability for failure to state a claim, the other grounds raised in support of dismissal by Defendants are not addressed.

[11]    DNA has not requested jurisdictional discovery.  While "the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (citations and internal quotation marks omitted).  A claim is not clearly frivolous "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state, [and] the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* (citations and internal quotation marks omitted).  Because DNA has not requested jurisdictional discovery, and because the factual allegations pleaded by DNA do not suggest with reasonable particularity the possible existence of sufficient contacts between any Defendant and Pennsylvania as outlined above, it is further recommended that the Court should decline to provide such relief *sua sponte. See e.g., Napoli v. First Choice Loan Services, Inc.*, No. CV197265JMVJAD, 2020 WL 39148, at *6 n.7 (D.N.J. Jan. 3, 2020) (declining to provide personal jurisdictional discovery *sua sponte* where it was not requested by plaintiff).

24

from the date of service of Objections to respond thereto. *See* Fed. R. Civ. P. 72(b)(2).

Failure to file timely objections will constitute a waiver of appellate rights. *See*

*Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


Dated: October 4, 2024.                          Respectfully submitted,

                                                 s/Christopher B. Brown
                                                 United States Magistrate Judge


cc:     Honorable Joy Flowers Conti
        Senior United States District Judge
        *via electronic filing*

        *Attorneys of record*
        *via electronic filing*